# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

_____
                                    )
In re:                              )
                                    )        Chapter 7
LYNN MARIE BUCK,                    )        Case No. 08-43918-HJB
                                    )
        Debtor                      )
_____     )
                                    )
                                    )
In re:                              )
                                    )        Chapter 7
JANICE MAUREEN GROCCIA,             )        Case No. 08-43919-HJB
                                    )
        Debtor                      )
                                    )
_____ )

## <u>MEMORANDUM OF DECISION</u>

Before this Court are Applications for Approval of Debtor's Counsel's Fees and Expenses (together, the "Fee Applications") filed by Attorney L. Jed Berliner ("Attorney Berliner") in these separate, but interrelated, Chapter 7 cases.   While orders of disallowance and disgorgement are the inevitable outcomes here, the Court takes the opportunity by this Memorandum to express its particular dismay with respect to the type of conduct by debtors' counsel here described.

I.    FACTS AND TRAVEL OF THE CASES

On November 28, 2008 (the "Petition Date"), Attorney Berliner filed bankruptcy petitions on behalf of  Janice Maureen Groccia ("Groccia") and Lynn Marie Buck ("Buck") (together, the "Debtors") under Chapter 13 of the Bankruptcy Code.  The Debtors are mother and daughter, respectively.  As of the Petition Date, they lived together and owned their home in Sterling, Massachusetts as joint tenants.[1]

In their bankruptcy Schedules, the Debtors estimated the value of their residence at $220,000 and reported that it was encumbered by a first mortgage of approximately $186,000, leaving equity of about $34,000.  The mortgage obligation was current as of the Petition Date.[2]  They also owned together a 2004 Hyundai Santa Fe automobile with a total reported value of $6,870; a 2002 Nissan Altima with a reported value of $7,360; and a joint checking account in the amount of $2,085.07.  Otherwise, the assets of Buck were negligible and fully exempt under § 522(d) of the Bankruptcy Code; and, while Groccia appeared to have relatively more valuable assets by dint of certain retirement accounts and pensions, her assets were represented to be similarly exempt or excluded from the bankruptcy estate.  All in all, the picture presented by the Debtors' Schedules was of debtors whose assets would realize no dividend for unsecured creditors in a Chapter 7 liquidation case.

---

[1]  The Debtors moved from Massachusetts to Florida shortly after their cases converted to Chapter 7.

[2]   The Chapter 13 Plans further discussed below set forth no payments to be made on account of mortgage arrearages.

2

As is true with most consumer debtors, the Debtors' financial difficulties likely arose from many places, but notable is that Groccia was a seventy-two year old widow whose sole source of income was Social Security payments, supplemented by the aforesaid retirement funds; and that her daughter, Buck, suffered from debilitating head injuries. Nor was there a hopeful picture presented by the Debtors' Schedules I and J. Groccia's Schedule I reflected gross monthly income totaling $2,342.29; while Buck's Schedule I reflected gross monthly income totaling $802.96, not including contributions made by her mother. Each Schedule J reflected monthly "net income" of $130.00; however, those calculations arose from highly unusual entries in their respective Schedules J: the Debtors estimated the following monthly costs of their combined existence: $100 for food, $0 for clothing, $3 for laundry and dry cleaning, $5 for medical and dental expenses, $13 for transportation expenses, and $0 for recreation.

Those Schedule J numbers were not all that were objectively odd. Perusal of the proposed Chapter 13 plan filed by Groccia revealed that over 36 months, she would pay the monthly amount of $130.00 to the Chapter 13 trustee to be distributed as follows over the life of the plan: 1) a 0.5217% dividend on the claims of her unsecured creditors – a grand total of $252.98 over the 36 months of the plan; 2) the sum of $3,959.00 to Attorney Berliner; and 3) the sum of $468.00 to the Chapter 13 trustee (of which this Court calculates the sum of $439.88 was attributable to commissions on account of payments made to her attorney). Accordingly, of the total sum of $4,680.00 to be paid under her plan, Groccia would pay as attorney's fees or on account of attorney's fees the sum of $4,398.88 or almost 94% of all distributions.

3

The Chapter 13 plan filed by Buck presented a similar picture.  Over the 36 months of Buck's proposed plan, she would also pay the monthly amount of $130.00 to the Chapter 13 trustee to be distributed over the life of the plan as follows: 1) a 1.2493% dividend on the claims of her unsecured creditors – a grand total of $253.01 over the 36 months of the plan; 2) the sum of $3,959.00 to Attorney Berliner; and 3) the sum of $468.00 to the Chapter 13 trustee (of which this Court calculates the sum of $439.88 is attributable to her attorney's request for compensation).  Accordingly, of the total sum of $4,680.00 paid under her plan, Buck would also pay as attorney's fees or on account of attorney's fees the sum of $4,398.88 or almost 94% of all distributions.

The Chapter 13 trustee objected to confirmation of each of the foregoing plans, contending that from "an economic and legal standpoint, it does not appear to be in the Debtors' best interest to be in Chapter 13;" that "based on the Chapter 13 Agreement filed in both of these cases, [Attorney Berliner] concluded 'Chapter 7 is appropriate' and that fees and costs would be $2,554.00;" and "[i]t appears the only benefit for the Debtors to be in Chapter 13 is that legal fees could be spread over 36 months, however, the fees are increased to $4,000 per case."  (Tr. Obj. Plan ¶ 6).  Indeed, each of the Chapter 13 Retainer Agreements prepared by Attorney Berliner and attached to each of the Chapter 13 Agreements required to be filed by Massachusetts Local Bankruptcy Rule 13-2(a)(1)(A)(ii) provided in relevant part:

> A Chapter 7 filing, to discharge unsecured debt only, is appropriate in your situation but it would cost $2484, including $2000 attorney fees and costs. A Chapter 13 filing allows for immediate suspension of unsecured debt, and gives you 36 months to pay fees and costs remaining after the first payment. [...]

4

Fees for Chapter 13 services are the greater of $4,000.00 or hourly in accordance with our usual and customary rates, currently set at $265.00 for myself and lesser for staff, plus costs. Fees also include the additional services required to obtain court approval of hourly fees when they exceed $4,000.00, and also for collection against you if necessary. I also will be paid reasonable costs plus the greater of hourly fees or 45% of (1) any asset taken from you before the bankruptcy filing which I recover for you, and (2) any recovery for a creditor's violations of bankruptcy or other consumer protection laws. You authorize me to associate with other counsel for prosecuting consumer protection laws if I believe you are best served this way. You will reimburse me for all reasonable expenses and disbursements.

This Court conducted a hearing on the Chapter 13 trustee's objections in both the Buck and Groccia cases and took the matters relating to the objections under advisement. Also on that date, the Court ordered Attorney Berliner, *inter alia*, to file the Fee Applications. As the Chapter 13 trustee indicated was her intention, she subsequently filed motions seeking that the cases be dismissed or converted to Chapter 7. Those motions were mooted, however, as was the Chapter 13 trustee's objections to the Chapter 13 plans, when the Debtors each responded by requesting conversion of their cases to Chapter 7.[3] The cases were accordingly converted, and each of the Debtors subsequently received her Chapter 7 discharge.

Notwithstanding the resolution of the objections to confirmation of the plans and the requests for dismissal or conversion, the issue of Attorney Berliner's Fee Applications

---

[3] Both Buck and Groccia noted in their affidavits filed with the Court that the Chapter 13 trustee's objection to their plans caused so much "stress" and "anxiety" that Groccia then made a decision to access her IRA to pay Attorney Berliner to convert both cases. This Court notes all of this stress and anxiety could have been avoided if the Debtors had been properly counseled to file their cases under Chapter 7 from the outset; by the time that the Debtors converted to Chapter 7, they would have already likely received their Chapter 7 discharges.

remained outstanding.  The Fee Applications were subsequently filed[4] and are now the only

remaining issues under advisement in the Debtors' cases.


II.     POSITIONS OF THE PARTIES[5]

   A.     Attorney Berliner

   Attorney Berliner contends that amendments to the Bankruptcy Code made by the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[6] ("BAPCPA") have

created a situation by which Attorney Fee-Only Chapter 13 Plans[7] are the only means by

which many prospective debtors can get prompt bankruptcy protection.  He argues that,

---

   [4] Attorney Berliner missed the original deadline for filing the Fee Applications, and on January 21, 2010, was ordered to disgorge his fees.  However, Attorney Berliner subsequently sought reconsideration of the January 21, 2010 orders, and they were vacated.  The Fee Applications were then filed timely in accordance with the extended deadline.

   [5] At or about the same time as the issues before the Court arose in these cases, they also arose in a slightly different context in the cases of two other debtors, Wendy Sicard (case number 07-42111-HJB) and Wayne Eric Puffer (case number 08-30290-HJB).  These debtors are also represented by Attorney Berliner.  Those cases remain in Chapter 13, and the issues taken under advisement were whether the cases and plans - also providing Attorney Berliner with all or virtually all of the distributions - had been filed in good faith.  Briefs were filed by Attorney Berliner and the Chapter 13 trustee in the Sicard and Puffer cases.  While Attorney Berliner appended only part of his brief in those cases to the Fee Applications before the Court here, this Court has considered all the briefs filed in all four matters when summarizing the positions of the parties and drafting this Memorandum.

   [6] Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub. L. No. 109-8, § 256, 119 Stat. 23 (2005).

   [7] Throughout this opinion, the Court uses the term "Attorney Fee-Only Chapter 13 Plan," as this is the terminology used by the parties.  In fact, the plans filed by these Debtors provided a *de minimis* dividend to unsecured creditors.  However, this Court adopts the terminology of the parties for simplicity.  There is no dispute in the record that attorney payment is the main purpose of each of these plans.  See Sicard/Puffer Br. Supp. Confirmation, 3 (attached to the Buck/Groccia Fee Applications) ("The debtors in these two cases seek approval for their Chapter 13 debt adjustment plans, which pay their counsel fees and the trustee commission but *no meaningful dividend to the general unsecured creditors*.") (emphasis added).

though many debtors qualify for relief under Chapter 7, they are unable to afford Chapter

7 attorneys' fees, which most attorneys require be paid before filing a Chapter 7 case.

These potential debtors, which Attorney Berliner argues are often the poorest and most in

need of immediate bankruptcy relief, experience continuous harassment from creditors, the

threat of imminent foreclosure and repossession, and constant financial hardship.

However, they do not have the assets or income to hire an attorney to file and prosecute

a Chapter 7 case.   By filing Attorney Fee-Only Chapter 13 Plans, Attorney Berliner

contends, these debtors have been best able to gain the immediate benefits of the

automatic stay and afford the bankruptcy counsel of their choice by paying debtors' counsel

through a Chapter 13 plan.  Indeed, in the Sicard and Puffer cases, Attorney Berliner has

provided affidavits from 14 individuals (all of whom are or were his former clients) who state

that they are satisfied with their decisions to pay their attorneys' fees through a Chapter 13

plan even though the fees are higher – because that route afforded them immediate relief

that they could not have attained under Chapter 7.[8]  Also attached to a later brief filed by

Attorney Berliner in the Sicard and Puffer cases was an affidavit by another attorney, Paul

A. LaRoche ("LaRoche"). The LaRoche affidavit sought to lend support to the argument

that many potential Chapter 7 debtors are unable to seek protection in Chapter 7, despite

great financial distress, because they are unable to afford Chapter 7 attorneys' fees.[9]

---

[8]  As no facts are in dispute and no evidence was taken or requested to be taken by any party, the role and necessity of the affidavits is not clear.  Further, their credibility is questionable at best, given that each is submitted by a person counseled by Attorney Berliner and each contains virtually identical language and structure.  The Court is comfortable inferring that they were not drafted by the debtors.

[9]  In response to this affidavit, the Chapter 13 trustee filed a Motion to Strike Affidavit.  In that motion, she argued that Attorney LaRoche does not have any personal knowledge of the facts in any of the cases under advisement and that the LaRoche Affidavit "convolute[s] the issues."  This

7

B.    Chapter 13 trustee

The Chapter 13 trustee presents three major arguments as to why Attorney Fee-Only Chapter 13 Plans are impermissible.  First, she argues that such plans are merely thinly veiled Chapter 7 cases, thereby contravening the fundamental purpose of Chapter 13 – to permit a debtor to repay his or her debts over an extended period of time through future income.  Second, the Chapter 13 trustee highlights the retainer agreements docketed in these cases.  She argues that these agreements placed debtors into involuntary servitude – forced to pay off their attorneys' fees and denied a discharge in the meantime.  Finally, the Chapter 13 trustee argues that Attorney Fee-Only Chapter 13 Plans fail to meet the good faith requirements of § 1325(a).

The Chapter 13 trustee also seeks to debunk the myth that Chapter 13 was the only manner in which these debtors could have obtained immediate bankruptcy relief.  She maintains that, in addition to opportunities available from other attorneys and legal organizations whose regular fees are less expensive or provide reduced-fee or *pro bono* services, these cases represent the types of no-asset cases in which debtors  frequently proceed *pro se* in Chapter 7.  The Chapter 13 trustee also notes what she claims to be an exaggeration of the exigent circumstances surrounding many debtors' filings.  She notes that most of the cases Attorney Berliner highlighted in his papers were not filed for several

---

Court took the Chapter 13 trustee's Motion to Strike under advisement and agrees that the LaRoche Affidavit is inappropriate.  As no evidence was taken and no facts are in dispute, the LaRoche Affidavit's proper form, if any, would have been as an amicus brief.  In light of the fact that the Chapter 13 trustee had no opportunity to examine LaRoche and that the affidavit may not have been admissible on relevance and personal knowledge grounds, even in an evidentiary context, this Court will grant the Chapter 13 trustee's Motion to Strike Affidavit in the Sicard and Puffer cases.

8

months after his initial consultation with the debtors – precisely the amount of time most debtors claimed it would have taken them to save the funds necessary to retain an attorney to file a Chapter 7 case.

III.   DISCUSSION

    A.   Attorney Fee-Only Chapter 13 Plans

        1.   *The Good Faith Requirement*

Section 1325(a)(3)[10] provides that "the court shall confirm a plan if– . . . the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3).  And under § 1325(a)(7), introduced in the BAPCPA amendments, the Court must also find that "the action of the debtor in filing the petition was in good faith."  The burden to demonstrate good faith is placed on the debtor.  Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005).  See also In re Virden, 279 B.R. 401, 407 (Bankr. D. Mass. 2002).

Left undefined by Congress, "Congress presumably used the phrase 'good faith' in its ordinary sense."  Keach v. Boyajian (In re Keach), 243 B.R. 851, 856 (B.A.P. 1st Cir. 2000).  However,  "[c]ourts differ in their approach to determining a debtor's good faith." Sullivan, 326 B.R. at 211.  In Keach, a panel of the Bankruptcy Appellate Panel for the First Circuit (the "First Circuit BAP") concluded that a court's examination of a debtor's good faith should be limited to the question of the debtor's honesty of purpose, "judged only by examining surrounding circumstances such as the debtor's candor with creditors and the

---

    [10] Unless otherwise noted, all statutory references will be to Title 11 of the United States Code.  11 U.S.C. §§ 101, et seq.

court."  <u>Keach</u>, 243 B.R. at 868, 871.  However, several courts, including those in this

District, have criticized the <u>Keach</u> approach as too restrictive.[11]

In <u>Sullivan</u>, another panel of the First Circuit BAP explicitly returned to a totality of

the circumstances test when assessing the good faith of Chapter 13 plans.[12]  That panel

opined that, in assessing a debtor's good faith, bankruptcy courts should generally

consider:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty
> in the bankruptcy process, including whether she has attempted to mislead
> the court and whether she has made any misrepresentations, (3) whether the
> Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to
> be discharged, (5) whether the debt would be dischargeable in a Chapter 7,
> and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

<u>Sullivan</u>, 326 B.R. at 212.  <u>See</u> <u>also</u> <u>Marrama v. Citizens Bank of Mass. (In re Marrama)</u>,

430 F.3d 474, 482 (1st Cir. 2005) (applying the totality of the circumstances test used in

---

[11] <u>See</u> <u>Virden</u>, 279 B.R. at 409; <u>In re Scotten</u>, 281 B.R. 147, 149 (Bankr. D. Mass. 2002);
<u>In re Fleury</u>, 294 B.R. 1, 6 (Bankr. D. Mass. 2003).  But with respect for the many courts that apply
the totality of the circumstances test, this Court still finds the <u>Keach</u> approach most persuasive and
the one intended by Congress.  Regarding <u>Keach</u>, this Court has written:

> The <u>Keach</u> decision has been criticized by some courts and commentators who have
> suggested that its holding limits a court's consideration of a debtor's postpetition
> good faith only to the debtor's postpetition behavior.  That criticism is misplaced and
> the <u>Keach</u> holding apparently misunderstood.  A court's consideration of postpetition
> honesty of purpose is frequently informed by a debtor's prepetition conduct. . . .
> <u>Keach</u> stands for a more subtle proposition: that a court may not alter rights that a
> debtor has been granted by Congress (e.g., the right to make a new non-serial
> Chapter 13 filing; the right to pay a dividend unaffected by the nature of a debt which
> Congress has expressly declared dischargeable; and the right to then discharge that
> debt) by determining that those rights are unfair or inequitable based on the court's
> distaste for Congress' choices.

<u>In re Hadsell</u>, 327 B.R. 520, 525 n.8 (Bankr. D. Mass. 2005).

[12] In an earlier case, another panel of the First Circuit BAP implicitly adopted the totality of
circumstances test for its analysis as to whether a Chapter 13 plan had been filed in good faith.
<u>Cabral v. Shamban (In re Cabral)</u>, 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002).  However, <u>Sullivan</u> did
so expressly.  <u>Sullivan</u>, 326 B.R. at 211.

Sullivan to assess good faith in a Debtor's request to convert from Chapter 7 to Chapter 13), aff'd, 549 U.S. 365 (2007) (on other grounds)).

However, this Court need not today parse between Keach and Sullivan. The issues before the Court do not implicate the nature of the claims discharged or a debtor's prepetition conduct; rather, they are centered on professional fees for services rendered by an attorney in a bankruptcy case and whether an attorney may direct or influence a debtor's choice of the chapter in which the debtor should file solely in order to assure payment of those professional fees.      Those good faith issues fit squarely within each of the Keach and Sullivan paradigms.

2.    *Attorney-Fee Only Chapter 13 Plans and Good Faith*

In these cases, there is no question as to the Debtors' purposes in choosing Chapter 13; they did so solely in order to pay their attorneys' fees. The purpose of Chapter 13 is to enable "individual debtors to reorganize their financial affairs . . . by extending due dates and servicing their debts out of future income pursuant to a payment plan crafted under the supervision of the bankruptcy court." Young v. Key Bank of Me. (In re Young), 66 F.3d 376, 377 (1st Cir. 1995).[13]

---

[13] "Although BAPCPA implemented numerous changes to the Bankruptcy Code, the fundamental purposes of a Chapter 13 bankruptcy remained intact. As explained in the Congressional Committee Notes,

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement. . . . The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. H.R. Rep. No. 95-595, at 1 (1977), U.S. Code Cong.

11

The plans in the cases before the Court serve a singular purpose – to pay the professional fees of Attorney Berliner.  Each of these debtors was qualified to file a Chapter 7 case.  Based on the Schedules filed by each debtor, it is overwhelmingly likely that each debtor would have retained all of her prepetition assets and received a prompt Chapter 7 discharge.  Instead, however, the Debtors were counseled to file Chapter 13 cases – which, but for the intervention of the  Chapter 13 trustee, would have delayed their discharges for three years and conditioned those discharges on 36 plan payments which their schedules indicated that they were poorly positioned to afford.  In addition, they were to pay substantially higher attorneys' fees and  trustee commissions.  The risks to the debtors of proceeding in this manner were substantial, especially here, where plan payments were based on arguably unfeasible budgets.  Such plans also create unjustifiable burdens on the trustee.  To require her to administer cases simply to make monthly payments to the Debtors' attorney and no other creditor defies both logic and the intent of Congress.  "Such filings have the inherent effect of placing the interests of the attorney above those of his client, the Court and the bankruptcy system as a whole. . . .  Allowing attorneys to utilize Chapter 13 for the sole purpose of ensuring payment of fees runs afoul of these manifest purposes [of Chapter 13]."  In re Diano, No. 01-85932-CRM, slip op., at 3-4 (Bankr. N.D.

---

& Admin. News 1978, p. 5863.  A Chapter 13 petition has always been completely voluntary.  Id.  These concepts were affirmed when Congress debated the changes proposed under BAPCPA.  H.R. Rep. No. 109-31 (2005), U.S. Code Cong. & Admin. News 2005, p. 88. . . .  In order to keep certain property, a Chapter 13 debtor agrees to pay creditors according to a repayment plan."

In re Marchionna, 393 B.R. 512, 521 (Bankr. N.D. Ohio 2008).

Ga. Dec. 17, 2001) (attach'd as Ex. A to Sicard/Puffer Am. Reply Br. of Ch. 13 Tr.).[14]  "A

plan whose duration is tied only to payment of attorney's fees simply is an abuse of the

provisions, purpose, and spirit of the Bankruptcy Code."  In re Paley, 390 B.R. 53, 59

(Bankr. N.D.N.Y. 2008).[15]  Chapter 13 plans in which all or virtually all of the funds to be

---

[14]  The overwhelming majority of courts that have addressed this question agree that
Attorney Fee-Only Chapter 13 Plans fail to meet the good faith requirement of § 1325(a)(3).
However, the plans in some of those cases also failed to meet good faith requirements on
additional grounds.  See In re Sanchez, No. 13-09-10955 MA, 2009 WL 2913224, at *1, *3 (Bankr.
D.N.M. May 19, 2009) (finding a lack of good faith with a plan that pays only attorneys' fees in a
case where debtors have a history of incurring "debts they are unable to repay and then seek[ing]
bankruptcy protection every few years in order to alleviate their debt burden"); In re Lehnert, No.
07-55988, 2009 WL 1163401, at *4 (Bankr. E.D. Mich. Jan. 14, 2009) (sustaining an objection to
an Attorney Fee-Only Plan because the debtors were able to afford some
dividend to creditors); In re Montry, 393 B.R. 695, 696-97 (Bankr. W.D. Mo. 2008) (stating
"[c]onfirming a Chapter 13 plan in a case where the only benefit to a debtor – beyond the relief
available in Chapter 7 – is the ability to pay the bankruptcy attorney's fees over time would . . .
unnecessarily raise the cost of filing a bankruptcy petition for debtors who do not need or are ill
suited for Chapter 13; and subvert the Supreme Court's holding in Lamie v. U.S. Trustee prohibiting
the payment of post-petition attorney's fees from a debtor's Chapter 7 bankruptcy estate.")
(footnotes omitted); In re Paley, 390 B.R. 53, 59-60 (Bankr. N.D.N.Y. 2008) (stating "[t]he Debtors
are not adjusting anything, much less debt; they are canceling and eliminating the claims of
creditors while simply paying their attorneys.  Under the theories advanced by the Debtors, carried
to an absurd extreme, if they had paid their respective attorneys in full up front, they would have
proposed a plan of $0 for zero months and demanded a Chapter 13 discharge. . . . These cases,
basically Chapter 7 cases hidden within Chapter 13 petitions, blur the distinction between the
chapters into a meaningless haze."); In re Dicey, 312 B.R. 456, 459-60 (Bankr. D.N.H. 2004)
(stating "[n]ot only is the Plan a thinly disguised liquidation, but it is in essence only a payment plan
for the Debtors' bankruptcy attorney's fees.  Congress did not create Chapter 13 as a vehicle solely
for the payment of attorney's fees.").  But see In re Molina, 420 B.R. 825, 830-33 (Bankr. D.N.M.
2009) (holding that a debtor who is in "economic straits;" "literally doing all that the statute requires
of her;" ineligible to file for Chapter 7; and compliant with "the letter, and the spirit, of the chapter
13 law as Congress has written it" may file an Attorney Fee-Only Chapter 13 Plan).

[15]  In so holding, this Court does not make light of the concern voiced by Attorney Berliner–
despite his motives in so arguing –  that some debtors are simply not able to afford the attorneys
fees associated with filing a Chapter 7 case, and that the holding of the United States Supreme
Court in Lamie v. U.S. Tr., 540 U.S. 526 (2004), without a Congressional "fix," has exacerbated the
problem.  But while this Court does not minimize the struggle of many Chapter 7 debtors to  retain
counsel, the Attorney Fee-Only Chapter 13 Plan here doubled the Debtors' attorneys' fees while
increasing the risk they would fail to receive a discharge at all.  In this way, Attorney Berliner has
not used Chapter 13 as a payment device; rather, he has used Chapter 13 as a payment collection
and enhancement device.  At some point, one has to wonder whether the line between client
assistance and client exploitation has been blurred and whether Attorney Berliner's form Retainer

distributed are paid only to Debtors' counsel unquestionably fail to meet any fair interpretation of the term "good faith" in §§ 1325(a)(3) and (7), respectively.

B.    The Fee Applications in the Converted Cases

The standards for allowance of compensation of professionals are generally set forth in § 330 of the Bankruptcy Code.  11 U.S.C. § 330 (2005).  The standards for Chapter 13 professionals are governed by § 330(a)(4)(B):

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B) (2005).  Section 330 further instructs the court:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

---

Agreement in these and other respects could be more properly characterized as adhesion contracts.

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3) (2005).

In this Circuit, the "lodestar" approach is commonly used to analyze the reasonableness of compensation. Boston & Me. Corp. v. Moore, 776 F.2d 2, 6-7 (1st Cir. 1985); Furtado v. Bishop, 635 F.2d 915, 920 (1st Cir. 1980). "Courts first develop a point of reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed." In re LaFrance, 311 B.R. 1, 20 (Bankr. D. Mass. 2004) (citing Garb v. Marshall (In re Narragansett Clothing Co.), 210 B.R. 493, 497 (B.A.P. 1st Cir. 1997)).

The lodestar rate ought to take into account "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984). The court must "consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction. . . . No presumption exists that a professional is entitled to the amount he or she requests." Garb, 210 B.R. at 498-99. Once determined, the applicable rate is multiplied by the hours reported, after those which are "duplicative, unproductive, excessive, or otherwise unnecessary" are subtracted. Grendel's Den, Inc., 749 F.2d at 950.

Finally, the lodestar is adjusted by various factors, including:

15

(1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorneys' services; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; [and] (12) awards in similar cases.

In re Smuggler's Beach Props., Inc., 149 B.R. 740, 743 (Bankr. D. Mass. 1993).

"[N]otwithstanding the standards set forth above, judges should exercise special care in characterizing the services of an attorney as excessive or unnecessary."  In re Laberge, 380 B.R. 277, 282 (Bankr. D. Mass. 2008).  "Judges are often poorly positioned and insufficiently informed to permit a conclusion that what was done for a client was not required in order to protect the client's interests."  Id.

However, no such deference on the part of the Court is appropriate here.  Neither of the Debtors' plans could have passed muster under §§ 1325(a)(3) or (7), nor on a close inspection should they have been found to satisfy § 1325(a)(6).  Even Attorney Berliner concedes in the Retainer Agreement which he drafted that, but for the payment of the Debtors' attorneys' fees, the Chapter 13 filings were unwarranted.  Each of the Debtors' Retainer Agreements with Berliner provided, "A Chapter 7 filing . . . is appropriate in your situation but it would cost $2484, including $2000 attorney fees and costs."  Both of the Debtors were ideal Chapter 7 candidates, having no previous filings, no valuable assets that could be property of the estate, and incomes well-below the state median.  Indeed, within a short time after conversion of these cases to Chapter 7, the Chapter 7 trustee reported no assets available for distribution to unsecured creditors, and each Debtor

16

eventually received her Chapter 7 discharge.  But these debtors could have received their

Chapter 7 discharges by early 2009.  Instead, they did not receive their discharges until

October 29, 2009 (Buck) and November 3, 2009 (Groccia).    Each of these debtors, if

properly counseled, could have filed Chapter 7 bankruptcy cases in November of 2008,

either by Attorney Berliner employing a reduced rate, by another attorney with a lesser

charge, by a legal services organization, or *pro se*.[16]  Attorney Berliner chose not to adopt

any of those routes, instead filing petitions in a chapter totally inappropriate to the Debtors'

needs and best interests so that he could maximize his compensation.  Indeed, the Court

refuses to believe that Attorney Berliner, having practiced under the Bankruptcy Code for

decades, did not understand that these Chapter 13 cases would inevitably fail by virtue of

the unrealistic calculations in Schedules J.[17]  But he also knew that, when they failed, the

cases could be converted to Chapter 7 and he would get the benefit of payments made by

the Debtors to the Chapter 13 trustee in the interim.  Under these circumstances, payment

of compensation in any amount would be an inappropriate reward.

---

[16]  The Court does not by any means suggest that it recommends that any debtor file a Chapter 7 case *pro se*.  Nevertheless, some do and manage to obtain bankruptcy discharges in Chapter 7 - without paying the sum of $4,000 for that privilege.

[17]  This Court chooses in this case not to *sua sponte* pursue whether the preparation of each of the Debtor's Schedules J – whose numbers were not reasonable but whose effect was to create the appearance of a surplus sufficient to support a Chapter 13 dividend – should be pursued as a violation of  § 707(b)(4)(D) and/or Fed. R. Bankr. P. 9011(b).  See In re Withrow, 391 B.R. 217 (Bankr. D. Mass. 2008).

17

IV.    <u>CONCLUSION</u>

In each of the above-captioned cases, the Court will allow each of Attorney Berliner's Fee Applications in the amount of $299.00 (the amount of the Chapter 7 filing fee in November of 2008) and order Attorney Berliner to disgorge the balances to the respective Debtors.

Orders consistent with this Memorandum will issue accordingly.


DATED:   July 9, 2010

By the Court,

_____

Henry J.  Boroff
United States Bankruptcy Judge